IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **SANTIAGO CHANO,** § | | |
| **ALEX ELIZONDO,** § | | |
| **MARIO DE LA GARZA,** § | | |
| **AND JUAN G. GARZA,** § | | |
| **Individually and on Behalf of** § | | |
| **Similarly Situated Individuals,** § | | |
| **Plaintiffs,** § | | |
| § | | |
| **v.** § | | **Civil Action No. 2:17-cv-141** |
| § | | **Jury** |
| **City of Corpus Christi, Texas,** § | | |
| **Defendant** § | | |

_____

**SECOND AMENDED JOINT MOTION TO APPROVE SETTLEMENT**
_____

TO THE HONORABLE NELVA GONZALES RAMOS, UNITED STATES DISTRICT JUDGE:

COME NOW Plaintiffs, Santiago Chano, et alia, and Defendant, City of Corpus Christi, file this Second Amended Joint Motion to Approve Settlement, and respectfully show:

### I.   Introduction

1. This is a wage and hour case. Plaintiffs allege that Defendant violated the Fair Labor Standards Act (FLSA) and state law by failing to pay them on-call pay. The Court entered its Order Granting Conditional Certification of Collective Action on April 9, 2018. [**D.E. 45**] The putative class, as set forth in that order, consists of: (1) current and former crew members and foremen; (2) employed in the Collections Division of the Wastewater Department of the City of Corpus Christi; (3) on or after April 25, 2014; (4) who were paid by the hour; (5) worked "on call" after normal working hours; and (6) were not paid "on call" pay for the qualified "on call" hours worked.

2.  After discovery (including multiple depositions and voluminous document production) and negotiation, the parties seek approval of their proposed settlement, which was reached by informed parties with the aid of an experienced mediator, Mr. Andy Lehrman. *See* **D.E. 85**.

3.  The parties attended mediation on April 29, 2019, and reached a settlement of all claims and controversies. A copy of the post-mediation settlement agreement is attached as **Exhibit A**.

4.  At mediation, Plaintiffs and Consents agreed to settle their claims for the sum of $25,000.00.

5.  After mediation and additional negotiations, Defendant agreed to contribute an additional $10,000.00, for a total settlement of $35,000.00.

6.  Plaintiffs' attorneys are waiving their fees. Plaintiffs' expenses are estimated to be $10,000.00. The remaining $25,000.00 would be apportioned as follows:

| | |
|---|---|
| Santiago Chano (Plaintiff) (foreman) | $ 3,000.00 |
| Alex Elizondo (Plaintiff) (foreman) | 3,000.00 |
| Mario De La Garza (Plaintiff) (foreman) | 3,000.00 |
| Juan G. Garza (Plaintiff) foreman) | 3,000.00 |
| | |
| Cerda, Gabriel (Consent—Response) | 1,631.59 |
| Garcia, Edward (Consent—Response) | 1,575.08 |
| Gonzalez, Ramiro (Consent—Response) | 1,549.77 |
| Mendoza, Marco (Consent—Response) | 428.39 |
| Meza, Leroy (Consent—Response) | 669.33 |
| Perez, Jorge (Consent—Response) | 1,201.72 |
| Sanchez, John (Consent—Response) | 1,481.39 |
| Sanchez, Miguel (Consent—Response) | 129.39 |
| | |
| Edwards, Sidney (Consent—Repair) | 288.89 |
| Gonzalez, Juan Garcia (Consent—Repair) | 288.89 |
| Hornsby, Akeem (Consent—Repair) | 288.89 |
| Hornsby, David (Consent—Repair) | 288.89 |
| Johnson, Nicholas (Consent—Repair) | 288.89 |
| Lam, Jose L. (Consent—Repair) | 288.89 |
| Lopez, Antonio Jr. (Inspection) (foreman) | 433.33 |
| Martinez, Jay (Consent—Repair) | 288.89 |
| Muniz, Victor M. (Consent—Repair) (foreman) | 433.33 |
| Nieto, Willie, Jr. (Consent—Repair) | 288.89 |

| | |
|---|---|
| Reyna, Manuel (Consent—Repair) | 288.89 |
| Rincon, David (Consent—Repair) | 288.89 |
| Spencer, Broderick (Consent—Repair) | 288.89 |
| Vela, Nicolas (Consent—Repair) | +   288.89 |
| Total to Plaintiffs and Consents | $25,000.00 |

7. The parties are requesting the Court's approval of the terms of the settlement. *See* 29 U.S.C. §216(b), which authorizes employers and employees to seek court approval of their proposed FLSA settlements.

## II.   Analysis and Authorities

8. In order to ensure workers maintain their rights under the FLSA, courts will only enforce FLSA settlements if the settlement amount is for the full amount claimed, or if less, there is a bona fide dispute between the parties regarding the actual amount owed by the employer. The FLSA presents an exception to the voluntary dismissal procedures of Fed. R. Civ. P. 41. The purpose and policy behind the FLSA's requirement for approval of settlements seek to prevent the potential for abuse in wage and hour settlements.

9. The parties represent that the settlement terms are fair and reasonable. There are bona fide disputes regarding the actual amount owed by the City of Corpus Christi, if any. The class faces risks, and the settlement accounts for those risks. In fact, the class faces both merits based and procedural challenges.

10. **A bona fide dispute exists as to Plaintiffs' and Consents' FLSA claims.** Because the settlement amount is for less than the full amount claimed, a bona fide dispute must exist between the parties regarding the actual amount owed by the employer. The City of Corpus Christi continues to dispute liability for claims brought under the Fair Labor Standards Act for the reasons set forth in its Motions for Summary Judgment. [**D.E. 81**] Specifically, Defendant denies it is liable to Plaintiffs or Consents under the FLSA because:

    a.    The City did not violate the FLSA by failing to compensate Named Plaintiffs and Consents when they were merely subject to voluntary "Call-Backs", rather than being assigned to "On-Call" status; and

    b.    In the alternative, even if Named Plaintiffs and Consents had actually been "On-Call" pursuant to Subsection (S) of the City's Compensation Plan, the restrictions therein imposed are not so intense that they deprived Named Plaintiffs or Consents of the ability to use their after-work hours for their own personal purposes.

11.    **There is a bona fide dispute as to Plaintiff's state law claims.**  In addition to the collective action involving purported FLSA violations for failing to pay for compensable work time, named Plaintiffs allege causes of action for declaratory judgment, breach of contract, quantum meruit, promissory estoppel, common law debt, and the Texas Payday Law. [**D.E. 1 at ¶ 6.2**]. These claims are not contemplated in the Court's order of conditional consideration and apply strictly and exclusively to named Plaintiffs. The City disputes liability for those claims because:

    a.    The City's Compensation Procedures are merely internal guidelines, lacking any evidence of contractual intent, and consequently, as a matter of law, do not constitute terms and conditions of an employment contract between Plaintiffs and the City;

    b.    Alternatively, even if the Compensation Procedures could be classified as contract or quasi-contract, the City's evidence demonstrates that it compensated named Plaintiffs in accordance with the applicable provision—to wit: Subsection (R), pertaining to "Call-Back[s]";

    c.    As a matter of law, Plaintiffs' claims under a theory of *quantum meruit* must fail because the City' governmental immunity is not waived for such State claims, and, alternatively, the evidence proves the City did not "accept" the services, and Plaintiffs had no expectation of compensation;

    d.    As a matter of law, Plaintiffs' claims of promissory estoppel are unavailing given the lack of any promise made by the City or detrimental reliance on the part of Plaintiffs; and,

    e.    As a matter of law, Plaintiffs cannot maintain a cause of action under the Texas Payday law against a political subdivision like the City.

12.     **Another bona fide dispute concerns the computation of damages presented by Plaintiffs' expert witness, Craig Adamson, C.P.A.**  Should the settlement not be approved, Defendant will challenge the admissibility of his testimony.  Specifically, although the expert calculated the total amount of on-call pay the City should have paid during the three-year period at issue, that figure does not assist the jury on any matter because it does not aid the fact finder in determining the amount of damages, if any, due any particular claimant, and it is not limited to what is owed to Plaintiffs and Consents.  Defendant will present additional challenges to the expert's opinions, including his qualifications to testify.

13.     **The Court should determine that the proposed settlement is reasonable**.  In evaluating the reasonableness of a settlement, a district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (internal quotation marks and alteration omitted).  This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable.  *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages).

14.     **Maintaining class certification could be difficult for the Consents**.  Procedurally, Defendant disputes whether all of the Consents fall into the class of people entitled to participate in the Conditionally Certified Collective Action, and, should the settlement not be approved, Defendant will move the Court to decertify the class.

Unlike the lenient standard for conditional certification, the standard for proceeding as a collective action at the second stage is "much more stringent." *Proctor v. Allsups Convenience Stores, Inc.,* 250 F.R.D. 278, 280 (N.D. Tex. 2008).  The court's factual determination on the

"similarly situated" question is based on: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) the purposes and putative benefits of a collection action under section 216(b). *Lusardi*, 118 F.R.D. at 359; *Portillo v. Permanent Workers, L.L.C.,* 662 F. App. 27, 281 (5th Circ. 2016); (*Mooney*, 54 F.3d at 1213-14 n.7). The Southern District of Texas has recognized that "the similarities necessary to maintain a collective action under §216(b) must extend 'beyond the mere facts of job duties and pay provisions.'" *Metcalfe v. Revention, Inc*., 2012 WL 3930319, at *5 (S.D. Tex. Sept. 10, 2012) citing *Anderson v. Cagle's, Inc.,* 488 F.3d 945, 953 (11th Cir. 2007) (noting "the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action") (quoting *White v. Osmose, Inc*., 204 F.Supp. 2d 1309, 1314 (M.D. Ala. 2002)).

Defendant will urge that the putative class members are not similarly situated because they have not been affected by a common policy, plan, pattern or practice that violates the FLSA and that has the same impact on all members of the purported class. Courts in the Southern District of Texas have interpreted "similarly situated" to mean an employee who is "affected by a common policy, plan, pattern, or practice". *McKnight v. D. Hous., Inc.,* 756 F. Supp. 2d 794,803 (S.D. Tex. 2010). "Decertification is proper if the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Proctor*, 250 F.R.D. at 280.

In the instant case, there is no common policy, plan, pattern, or practice by the City of Corpus Christi that violates the FLSA and had the same impact on all the members of the purported class. At the applicable period in time, the procedures for compensating employees for on-call hours were facially lawful, and they recognized that employees must be compensated in accordance with applicable state and federal law. Plaintiffs are unable to demonstrate that there

was a common policy or practice requiring non-exempt employees to work "on call" without compensation.

Class certification is inappropriate where there is no evidence of an employer-wide policy requiring employees to work without compensation. *See Simmons v. TMobile USA, Inc.,* 2007 U.S. Dist. LEXIS 5002 *31-32 (S.D. Tex. January 24, 2007) (class certification inappropriate at Step One where there is no evidence of employer-wide policy requiring employees to work improper overtime; some managers employed different approaches regarding overtime and assignments of additional duties, depending on the stores' respective needs and goals, but there was no employer-wide policy requiring employees to work overtime).

Specifically, various City supervisors use different approaches regarding assignments of duties. While some supervisors assigned employees to "on call" duty, others used a voluntary call-back procedure in the event of emergencies. The City will introduce evidence showing that supervisors of the Response personnel in the Collections Division relied on voluntary call back procedures, while supervisors in other areas of the Wastewater Department used on-call procedures. There is no evidence of a city-wide policy requiring workers to fulfill "on call" duties without compensation. Therefore, class certification is inappropriate.

15. Moreover, **this case involves not only the FLSA but also the substantive state laws of Texas.** *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 290 (W.D. Tex. 2007) ("Because the laws of numerous states may be relevant to individual class member claims, plaintiffs would apparently face a further significant challenge to certifying the class outside the settlement context."). Moreover, it is no secret that the Fifth Circuit is less than receptive to class actions. In fact, some commentators have referred to the Fifth Circuit as the place "class actions go to die." *See, e.g., "Lost Causes?"--Fraud Pleading in the 5th Circuit*, Jim Hamilton's World of Securities

Regulation (November 12, 2008) *http:// jimhamiltonblog.blogspot.com/2008/11/lost-causes-fraud-pleading-in-5th.html*. Even in jurisdictions that have historically been considered more hospitable to wage and hour class actions, the recent trends have not been uniformly favorable to plaintiffs. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009) (reversing certification of wage and hour class action); *Duran v. U.S. Bank Nat. Assn.*, 59 Cal. 4th 1, 325 P.3d 916 (2014) (reversing certification of wage and hour class action following jury trial in plaintiffs' favor); *see also*, Schneider & Stine, Wage And Hour Law: Compliance & Practice, § 20:19.50 (courts "frequently" decertify collective actions).  Thus, the Consents may face a "significant challenge" to maintaining the class outside the settlement context." *DeHoyos,* 240 F.R.D. at 290.

16.     **Continued litigation is risky and time consuming for all parties.**  "Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, 1:11-CV-88, 2014 WL 3447947, *7 (S.D. Ohio July 11, 2014) (citing *Beckman*, 293 F.R.D. at 479—80 (S.D.N.Y.2013). "This is particularly true here, where Plaintiffs alleged overtime claims under the FLSA, and under [several] state laws" governing the payment of overtime. *Id*.  "Re-solving the procedural issues, the merits, and damages [is] risky, costly, and time consuming." *Id*.  There are well-known examples of wage and hour cases lasting more than a decade. *See, e.g., Duran*, 59 Cal. 4th at 50 (reversing certification following bench trial ruling in favor of a class of plaintiffs and stating "a new trial will be required for both liability and restitution, and the trial court may entertain a new class certification motion").

And there are certainly wages cases that took years to resolve, even after *successful* merits determinations such as a jury verdict in favor of the plaintiffs. *See, e.g., Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 229-30 (5th Cir. 2011) (more than 6 years of litigation, including more

than 2 ½ years of litigation after a jury verdict in plaintiffs' favor); *Belt v. EmCare, Inc.*, 444 F.3d 403, 405-06 (5th Cir. 2006) (nearly 2 years of litigation after summary judgment rendered in favor of plaintiffs). Because wage and hour litigation can be unpredictable, the parties want to resolve their differences through settlement.

17. **The settlement is reasonable given the risks.** "In any case there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849 (E.D. La. 2007) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "In assessing the potential range of recovery, the Court takes into account the risks involved in the litigation and the potential costs involved, and ultimately considers whether the settlement amount is fair and reasonable and falls within a reasonable range of recovery." *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 345 (N.D. Tex. 2011). This does *not* require the Court to consider "an express estimate of the range of possible monetary recovery should plaintiffs prevail at trial." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983); *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999). This is particularly true where "estimating the range of possible recovery ... is difficult." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1067 (S.D. Tex. 2012). Further, courts recognize that parties give and take to achieve settlements, with neither ending up with exactly the remedy they would have asked the Court to enter absent the settlement. *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010). In other words, an assessment of the range of possible recovery is based on the realities of litigation at issue. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (a "trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a

hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes'").

18.     **Although bona fide disputes remain, the parties are proposing settlement that is fair and reasonable.  Specifically, the amounts to be distributed to Plaintiffs were determined as follows:**

**Named Plaintiffs:**

Each of the named Plaintiffs will receive $3,000.00:

| | |
|---|---:|
| Santiago Chano (Plaintiff) (foreman) | $ 3,000.00 |
| Alex Elizondo (Plaintiff) (foreman) | 3,000.00 |
| Mario De La Garza (Plaintiff) (foreman) | 3,000.00 |
| Juan G. Garza (Plaintiff) foreman) | + 3,000.00 |
| | $12,000.00 |

These foremen commenced the litigation.  They responded to in-depth discovery requests, had their depositions taken, attended a day-long mediation, and were otherwise actively involved in the litigation, unlike the Consents.  By starting the litigation, the four named Plaintiffs exposed themselves to at least the possibility of reprisal—a risk many workers are unwilling to take. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (noting current employees are often reluctant to sue their employer); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) ("an employee fearful of retaliation or of being blackballed' in his or her industry may choose not to assert his or her FLSA rights").  Although none of Plaintiffs reported any retaliation (and the City of Corpus Christi's policies explicitly prohibit retaliation), there is, nevertheless, a perception of the risk among many workers. The settlement amount of $3,000.00 per Plaintiff therefore includes a service award, and such is consistent with those given in wage and hour litigation. *See, e.g., In re M.L. Stern Overtime Litig.*, 07CV118 BTM (JMA), 2009 WL 3272872, *3-4 (S.D. Cal. Oct. 9, 2009) (awarding class representatives $15,000 each); *Glass v.*

*UBS Fin. Servs., Inc.*, C-06-4068 MMC, 2007 WL 221862, *16-17 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (approving $25,000 award to each of four plaintiff representatives of 13,176--member class from $45 million settlement amount); *Camp v. Progressive Corp.*, CIV.A. 01-2680, 2004 WL 2149079, *7 (E.D. La. Sept. 23, 2004) (approving service awards to the class representative in the amount of $10,000 each).

**Consents—Response Division:**

**The Consents in the Response Division will be paid a total sum of $8,666.66.**

The claims of the Consents who worked in the Response Division have been valued at twice the estimated value of the other Consents' claims. The parties have allocated 2/3 of $13,000.00 to the Response Division Consents ($8,666.66), and 1/3 to the other Consents ($4,333.64). For the Response Consents, the parties used the employee's dates of employment to calculate what percentage of the recovery they should receive. None of these employees were foremen.

Cerda, Gabriel                                                  $1,631.59
    4.25.14 to 4.25.17
    1097 days = 18.826%

Garcia, Edward                                                  1,575.08
    6.2.14 to 4.25.17
    1059 days = 18.174%

Gonzalez, Ramiro                                                1,549.77
    4.25.14 to 5.15.15 (on limited duty)
    7.10.15 (return to work) to 4.25.17
    1042 days = 17.882%

Mendoza, Marco                                                  428.39
    7.11.16 to 4.25.17
    288 days = 4.943%

| | |
|---|---|
| Meza, Leroy<br>　　8.25.14 to 9.7.15<br>　　2.4.17 to 4.25.17<br>　　450 days = 7.723% | 669.33 |
| Perez, Jorge<br>　　4.24.14 to 8.29.14 (retired)<br>　　6.15.15 to 4.25.17<br>　　808 days = 13.866% | 1,201.72 |
| Sanchez, John<br>　　8.4.14 to 4.25.17<br>　　996 days = 17.093% | 1,481.39 |
| Sanchez, Miguel<br>　　5.22.14 to 8.16.14 (retired)<br>　　87 days = 1.493% | +   129.39 |
| Total to Consents—Response Division: | $8,666.66 |

**Consents—Other:**

**The Consents who were not employed in the Response Division will be paid a total sum of $4,333.64.**

The claims of the remaining Consents are valued at half the value of the claims of the Response Division Consents because they received on-call pay for a portion of the time period at issue (April 25, 2014 through April 25, 2017). The settlement amounts were calculated on a pro rata basis, and the foremen's claims have been valued at 1.5 times more than the claims of the crew, to reflect that a foreman's pay rate is approximately 1.5 time more than a crew member's rate.

| | |
|---|---|
| Edwards, Sidney (Consent—Repair) | $ 288.89 |
| Gonzalez, Juan Garcia (Consent—Repair) | 288.89 |
| Hornsby, Akeem (Consent—Repair) | 288.89 |
| Hornsby, David (Consent—Repair) | 288.89 |
| Johnson, Nicholas (Consent—Repair) | 288.89 |
| Lam, Jose L.  (Consent—Repair) | 288.89 |
| Lopez, Antonio Jr. (Consent—Inspection) (foreman) | 433.33 |
| Martinez, Jay (Consent—Repair) | 288.89 |

| | |
|---|---:|
| Muniz, Victor M.  (Consent—Repair) (foreman) | 433.33 |
| Nieto, Willie, Jr. (Consent—Repair) | 288.89 |
| Reyna, Manuel (Consent—Repair) | 288.89 |
| Rincon, David (Consent—Repair) | 288.89 |
| Spencer, Broderick (Consent—Repair) | 288.89 |
| Vela, Nicolas (Consent—Repair) | +   288.89 |
| Total | $ 4,333.64 |

19. Because the settlement is reasonable and fair, and because there remain bona fide disputes, the parties seek judicial approval of the proposed settlement.

20. Plaintiffs' counsel represents that he has consulted with the Consents who filed objections to the previously submitted settlement proposal.  The following people have informed Plaintiffs' counsel that they object to the settlement because they do not believe it adequately compensates them for their losses.  They may file an objection directly with the Court:

> Meza, Leroy (Consent—Response)  (Proposed settlement amount of $669.33, or 7.723% of the settlement funds to be payed to Consents who were in the Response Division);

> Johnson, Nicholas (Consent—Repair) (Proposed settlement amount of $288.89, or 6.25% of the settlement funds to be payed to Consents who were in the Repair Division);

> Martinez, Jay (Consent—Repair) (Proposed settlement amount of $288.89, or 6.25% of the settlement funds to be payed to Consents who were in the Repair Division);

> Spencer, Broderick (Consent—Repair) (Proposed settlement amount of $288.89, or 6.25% of the settlement funds to be payed to Consents who were in the Repair Division); and

> Vela, Nicolas (Consent—Repair) (Proposed settlement amount of $288.89, or 6.25% of the settlement funds to be payed to Consents who were in the Repair Division).

**Prayer**

WHEREFORE, PREMISES CONSIDERED, the parties pray the Court approve the terms of the proposed settlement.  The parties also pray for all such other and further relief to which they may be justly entitled.

       Respectfully submitted,

       /s/ *Mark DeKoch*
       Mark DeKoch
       Attorney-in-Charge
       State Bar No. 05722500
       Fed. I.D. No. 7442
       MarkD@cctexas.com

       */s/ Alissa Anne Adkins*
       Alissa Anne Adkins
       State Bar No. 00785653
       Southern District No. 32884
       AlissaA@cctexas.com

       /s/ *Renatto Garcia*
       Renatto Garcia
       State Bar I.D. No. 24090113
       Fed. I.D. No. 3102277
       RenattoG@cctexas.com

       ASSISTANT CITY ATTORNEYS
       CITY OF CORPUS CHRISTI LEGAL DEPT.
       P.O. Box 9277
       Corpus Christi, Texas 78469-9277
       Telephone: (361) 826-3360
       Facsimile: (361) 826-3239

       **ATTORNEYS FOR DEFENDANT,**
       **CITY OF CORPUS CHRISTI**

       */s/ Josh W. Hopkins w/permission*
       Josh W. Hopkins
       State Bar No. 00787714
       Federal Bar No. 17618
       HERRMAN & HERRMAN
       The Herman Building
       1201 Third Street
       Corpus Christi, TX 78404
       PH: (361) 882-4357
       FAX: (361) 883-7957
       jhopkins@herrmanandherrman.com

       **ATTORNEY FOR PLAINTIFFS**
       **AND CONSENTS**

## **NOTICE OF ELECTRONIC FILING**

I hereby certify that I have electronically submitted for filing a true and correct copy of this document in accordance with the Electronic Case Files System of the Southern District of Texas on this the 27th day of June, 2019

*/s/ Alissa Anne Adkins*
Alissa Anne Adkins

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document was served on all parties through their attorneys via the electronic case file system on this the 27th day of June, 2019.

*/s/ Alissa Anne Adkins*
Alissa Anne Adkins